## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| TAMMY ROBERTS, ) | |
| ) | |
| Plaintiff; ) | |
| ) | |
| vs. ) | Case No. CIV-2017-131-M |
| ) | |
| CIMARRON MEMORIAL HOSPITAL ) | **JURY TRIAL DEMANDED** |
| ) | **ATTORNEY LIEN CLAIMED** |
| and ) | |
| ) | |
| NEWLIGHT HEALTHCARE LLC ) | |
| ) | |
| Defendants. ) | |

## **COMPLAINT**

Plaintiff, Tammy Roberts, by and through her counsel, Christine C. Vizcaino, hereby complains against Cimarron Memorial Hospital and NewLife Healthcare LLC("Defendants").

## **PARTIES**

1. Plaintiff, Tammy Roberts, an adult female, is an individual citizen and resident of the United States and the State of Oklahoma.

2. The Defendants are:

    a. Cimarron Memorial Hospital, a for profit hospital doing business in Boise City, Oklahoma.

    b. NewLight Healthcare LLC, a limited liability company doing business in Boise City, Oklahoma.

## PRELIMINARY STATEMENT

3. Plaintiff asserts claims pursuant to the Americans with Disabilities Act as set forth in 42 U.S.C. §12101 *et seq*. (hereinafter "ADA"), for discrimination based upon her disability and retaliation for requesting a reasonable accommodation. Plaintiff also brings a state law claim for handicap discrimination (disability discrimination) as prohibited by the Oklahoma Anti-Discrimination Act (hereinafter "OADA"), *see* 25 O.S. §1101 *et seq*.

4. Plaintiff asserts claims pursuant to the Genetic Information Nondiscrimination Act of 2008 for discrimination based upon her genetic health information.

5. Plaintiff asserts claims pursuant to the Employee Retirement Income Security Act of 1974 (hereinafter "ERISA"), for retaliation based upon her protected complaints of Defendants' prohibited transactions and breach of fiduciary responsibility.

## JURISDICTION AND VENUE

6. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§1331 and 1343, 42 U.S.C. § 12117(a). Plaintiff also brings pendent state law claims. This Court also has jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a).

7. Jurisdiction for this action is further authorized in this Court pursuant to section 207(a) of GINA, 42 U.S.C. § 2000ff-6(a), which incorporates by reference section 706(f)(3) of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-5(f)(3).

8. Venue in this district is proper pursuant to 28 U.S.C. § 1391 and 42 U.S.C. § 2000ff-6(a), because Defendant operates in this district and the unlawful conduct giving rise to the claims occurred in this district.

9. Declaratory, injunctive, and equitable relief is sought pursuant to 28 U.S.C. §§2201 and 2202, 42 U.S.C. §12117(a) and 42 U.S.C. §2000e-5(g). Compensatory, liquidated and punitive damages are also sought.

10. Costs and attorney's fees may be awarded pursuant to 42 U.S.C. §2000e-5, 42 U.S.C. §12205and Fed. R. Civ. P. 54.

## CONDITIONS PRECEDENT

11. Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on or about April 24, 2016. This charge was EEOC charge number 564-2016-640. Plaintiff was issued a notice of right to sue dated November 10, 2016, and this lawsuit is filed within ninety (90) days of Plaintiff's receipt of such notice.

12. Plaintiff timely filed a second charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on or about February 8, 2017. Although Plaintiff has yet to receive a right to sue letter for this charge, she intends to timely amend her pleading upon receipt.

13. Plaintiff has exhausted her administrative remedies under federal and state law.

## STATEMENT OF FACTS/GENERAL ALLEGATIONS

14. Each of the Defendants is a common employer of the Plaintiff. Plaintiff received her paychecks from Cimarron Memorial Hospital, however, Cimarron Memorial

Hospital is managed and operated by NewLight Healthcare, Plaintiff was supervised by employees of NewLight Healthcare, and the termination decision for Plaintiff was made by NewLight Healthcare.

15. Plaintiff worked at Cimarron Memorial Hospital from approximately December 2000 until July 2016.

16. At all times while employed with Defendants, Plaintiff was qualified for the position she held.

17. Plaintiff satisfactorily performed her job duties during her employment with Defendants.

18. To Plaintiff's understanding, Plaintiff's job and/or job duties continued to exist after her termination.

19. During the course of Plaintiff's employment, Plaintiff participated in Defendants' employee benefits program and has therefore been a Health Plan "participant" within the meaning of § 3(7) of ERISA, 29 U.S.C. 1002(7).

20. Around May 2015, Plaintiff tested positive for BRCA2 Cancer Mutation gene and was diagnosed with early onset BRCA2.

21. Plaintiff notified Defendants of her diagnosis and her need for an accommodation in the form of medical leave so that she could attend doctor's appointments and medical treatments, which leave was protected by the ADA.

22. Plaintiff's supervisor, Barbara Carter, attempted to discourage Plaintiff from having surgery; however, it was medically necessary for Plaintiff to do so.

23. Shortly thereafter, Plaintiff was required to take intermittent medical leave in order to obtain medical testing, treatment and surgical procedures related to her cancer diagnosis.

24. While Plaintiff was out on medical leave, she received harassing phone calls from her supervisor, Barbara Carter, Director of Nursing, in which Ms. Carter threatened the Plaintiff that she would be fired if she did not obtain a medical release and return to work.

25. Plaintiff reported Ms. Carter's behavior to Tim Beard, CEO, but no corrective action was taken.

26. On or about January 13, 2016 Plaintiff turned in a time off request form for the month of February to Ms. Carter.

27. Ms. Carter denied Plaintiff's request for time off and advised Plaintiff that the reason for such denial was because the schedule had already been made and Plaintiff was scheduled for the night shift on February 12, 13, and 14.

28. When Plaintiff questioned Ms. Carter about being scheduled for night shifts when she was a day shift nurse, Ms. Carter informed Plaintiff that she and Mr. Beard had made the decision that Plaintiff needed to work those shifts because she "owed them" for being on medical leave.

29. On or about January 13, 2016, Plaintiff received a call from the hospital scheduled to perform her upcoming surgery on January 18, 2016. Plaintiff was notified that the facility was unable to obtain a prior authorization from her insurance company,

Blue Cross Blue Shield, because her medical insurance premiums had not been paid since November 2015.

30. Immediately thereafter, Plaintiff confronted Mr. Beard about Defendants' failure to pay her insurance premiums.

31. Mr. Beard advised Plaintiff that she "needed to keep [her] mouth shut and not worry about it". Mr. Beard also informed Plaintiff that he had used the money to pay other bills and that Defendant would pay the premiums when it had the money to do so.

32. Plaintiff protested Defendants' conduct and informed Mr. Beard of her belief that his behavior was illegal and of her intent to file a complaint with the department of labor regarding this matter.

33. As a result of Plaintiff's surgery on January 18, 2016, she was required to remain off work until around January 27, 2016.

34. While Plaintiff was out on medical leave in January of 2016, she received notice from Aflac that the Defendants had not paid her premiums for this policy either.

35. After being released from her physician around January 27, 2016, Plaintiff returned to work on or about January 28, 2016.

36. On January 28, 2016 Plaintiff was disciplined by Mr. Beard, and placed on a ninety (90) day suspension without pay for allegedly submitting a false doctor's release.

37. The reasons for Plaintiff's suspension were false and pretextual in that Plaintiff had not submitted a false doctor's release and despite having Plaintiff's doctor's office

personally contact the Defendants to explain the situation and clear up any confusion, Defendants refused to rescind Plaintiff's suspension.

38. On or about February 7, 2016 Plaintiff submitted a written complaint to the Board of Directors regarding the unlawful conduct of Mr. Beard and Ms. Carter, including Defendants prohibited transactions and breach of fiduciary responsibility.

39. In retaliation for submitting the above complaint, Ms. Carter notified Plaintiff that she would be moved to the night shift and only allowed to work two nights per week upon her return from suspension.

40. Plaintiff protested Ms. Carter's decision, complained of retaliation, and requested that she be permitted to return to her previous work conditions.

41. Due to Defendants' failure to address Plaintiff's concerns, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") around April 24, 2016.

42. In retaliation for reporting Defendants' unlawful conduct, Defendants began to reduce Plaintiff's work hours and shift assignments until she was ultimately no longer scheduled for any shifts around July 2016

43. Plaintiff's employment was effectively terminated around July 2016.

44. Motivating factors in the decisions to suspend, demote and subsequently terminate the Plaintiff, were due to Plaintiff's disability, genetic information and complaints of disability discrimination in violation of the ADA and state law, with another significant factor being retaliation for her protected activity in reporting Defendants' breach of fiduciary duty and prohibited transactions and filing

complaints in response to receiving such unlawful treatment. At the least, these factors were part of a group of mixed motives for such decision such that Plaintiff is entitled to protection under the mixed motive doctrine.

45. As a result of Defendant's actions, Plaintiff has sustained loss of employment, loss of career path, loss of opportunity, loss of wages, loss of fringe benefits, and other compensation; and consequential and compensatory damages including, but not limited to, those for humiliation, loss of dignity, loss of enjoyment of life, worry, stress, and anxiety.

46. Furthermore, as a result of Defendant's actions against her, Plaintiff has experienced a great deal of emotional distress.

47. All adverse actions taken by the Defendant against Plaintiff were intentional, willful, malicious, and/or with reckless disregard for the legal rights of Plaintiff.

**COUNT I**
**Discrimination Based Upon Disability in Violation of the American's with Disabilities Act 42 U.S.C. §12101 *et seq.***

48. Plaintiff reasserts and incorporates the paragraphs set forth above as if fully restated herein.

49. Each Defendant is an "employer" under the Americans with Disabilities Act and employs more than fifteen (15) employees.

50. At all times relevant hereto, Plaintiff was a qualified individual as defined by 42 U.S.C. §12111(8).

51. Plaintiff suffers from serious medical conditions and disabilities as defined under the Americans with Disabilities Act in that these conditions, substantially interfere with her major life activities in the following ways:

    a. Affects her normal bodily functions in cell growth and cell development; and

    b. Resulted in a period of incapacitation and continuing medical treatment;

    c. Without remedial measures would cause Plaintiff to be unable to care for herself and could lead to her death.

52. As a result of the limitations set out in Para. 51, above, Plaintiff suffers from a disability as defined by the ADA Amendments Act (ADAAA), 42 U.S.C. § 12102(1)(A), (2)(B), in that she suffers from a condition which materially impairs major life activities and bodily functions, and/or is regarded as having such impairment, as defined by 42 U.S.C. § 12102(1)(C), (3).

53. At the least, the Defendants perceived Plaintiff to have a disability for reasons including that Defendant, through its agents had communications regarding Plaintiff's medical condition and medical treatment.

54. Defendant's willful and malicious misconduct as described above, in discriminating against Plaintiff based upon her disability is in clear violation of the American's with Disabilities Act, as amended by the American's with Disabilities Act Amendments Act of 2008.

55. Plaintiff's disability was a motivating factor in Defendants' adverse employment-related actions described above, including without limitation, discriminating

against Plaintiff and ultimately terminating Plaintiff. Defendants violated Plaintiff's civil rights by taking such adverse actions.

56. As a result of Defendants' illegal conduct, Plaintiff has suffered losses, injury, and damages, as set forth above.

57. Plaintiff is entitled to and seeks all legal and equitable remedies provided to a prevailing plaintiff under the ADA, including, without limitation: back pay, front pay, compensatory and punitive damages, as well as appropriate declaratory and injunctive relief.

58. Plaintiff is also entitled, under 42 U.S.C. § 2000e-5(k) and 42 U.S.C. §12205, to recover attorney fees and costs incurred in pursuing this claim.

## COUNT II
**Discrimination Based on Handicap/Disability in Violation of The Oklahoma Anti-Discrimination Act , 25 O.S. §1101 *et. seq.***

59. Plaintiff incorporates the paragraphs as set forth above as if fully restated herein.

60. The Oklahoma Anti-Discrimination Act ("OADA"), 25 O.S. §1101 *et. seq.* sets forth a clear and unequivocal public policy regarding discrimination in employment in Oklahoma.

61. The conduct complained of by the Plaintiff and perpetrated by the Defendants are a direct violation of the OADA which prohibits discrimination based upon disability.

62. The State of Oklahoma provides a remedy for those wrongfully discharged in violation of public policy, in the instant case—for discriminatory reasons. Plaintiffs are allowed to recover damages for violations of 25 O.S. §1302 through Oklahoma's recently enacted cause-of-action provision contained in 25 O.S. §1350.

63. As a result of Defendants' discriminatory and retaliatory actions against Plaintiff, she has suffered the losses and damages described above.

64. As such, Plaintiff is entitled to recover from Defendant all backpay and liquidated damages, pursuant to 25 O.S. §1350.

## COUNT III

### Discrimination Based on The Genetic Information Nondiscrimination Act of 2008

65. Plaintiff incorporates the paragraphs as set forth above as if fully restated herein.

66. The Genetic Information Nondiscrimination Act of 2008 prohibits employers from discriminating against employees on the basis of genetic information.

67. Defendants are now, and at all times relevant hereto, have been an employer engaged in an industry affecting commerce within the meaning of §201 (2) (B) (i) of the GINA, 42 U.S.C.§2000ff(2)(B)(i), all of which incorporate by reference Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

68. Plaintiff was an employee within the meaning of §201 (2) (A) (i) of the GINA, 42 U.S.C.§2000ff(2)(A)(i), which incorporates by reference of § 701(f) of Title VII, 42 U.S.C. §§ 2000e(f).

69. Prior to her termination, Plaintiff notified Defendants that she was diagnosed with a genetic disability.

70. Shortly after learning of Plaintiff's disability, Defendants began to discriminate and retaliate against the Plaintiff in violation of Plaintiffs' rights under the Genetic Information Nondiscrimination Act of 2008, 42 U.S.C. §2000ff et seq.

71. As a result of Defendants' illegal conduct, Plaintiff has suffered losses, injury, and damages, as set forth above.

72. Plaintiff is entitled to and seeks all legal and equitable remedies provided under § 207 of the GINA.

## COUNT IV
## Retaliation in violation of Employee Retirement Income Security Act of 1974, Section 510, 29 U.S.C. § 1140

73. Plaintiff incorporates the paragraphs as set forth above as if fully restated herein.

74. On information and belief, Cimarron Memorial Hospital, NewLight Healthcare and/or one of its corporate entities is the fiduciary plan sponsor for the health benefits plan ("Health Plan") offered to its employees in which the Plaintiff participated.

75. As fiduciaries to the Health Plan, Defendants owed fiduciary duties to the Health Plan and its Participants, as set forth in §§404, 405, 406, and 408 of ERISA, 29 U.S. §§ 1104, 1105, 1106, and 1108.

76. Defendants grossly and deliberately breached their fiduciary duties by their failure to remit deducted employee contributions to the Health Plan, and diverting those plan assets to other corporate and/or personal purposes. In so doing, Defendants failed to discharge their fiduciary duties solely in the interest of the participants and beneficiaries of the Health Plan, for the exclusive purpose of providing benefits to the participants and beneficiaries of the Health Plan, and in accordance with the documents and instruments governing the Health Plan, all in violation of §

404(a)(1)(B), 29 U.S.C. §1104(a)(1)(B), and regulations found at 26 CFR 54.9815-2715(b).

77. By diverting, or permitting or allowing diversion of, employee contributions to the Health Plan to corporate and/or personal purposes, Defendants dealt with the assets of the Health Plan in their own interests, or for their own account, in violation of ERISA §406(b)(1), 29 U.S.C. §1106(b)(1). By this conduct, Defendants engaged in prohibited transactions under ERISA.

78. Plaintiff objected to and/or complained to Defendants about violations of ERISA, including but not limited to, engaging in prohibited transactions in violation of § and breach of fiduciary duties.

79. Plaintiff was retaliated against and ultimately terminated for pretextual reasons within a short period of time following her reporting activities.

80. A motivating factor in Plaintiff's termination was her aforesaid inquiries, objections, and/or complaints about ERISA violations.

81. Plaintiff's termination for engaging in protected activity therefore constitutes a violation of ERISA, Section 510.

82. As a result of Defendant's illegal conduct, Plaintiff has suffered losses, injury, and damages, as set forth above.

83. Plaintiff is entitled to recover all actual and compensatory damages, including, but not limited to, damages for back pay, front pay, humiliation, loss of dignity, loss of enjoyment of life, worry, stress, intentional infliction of emotional distress and anxiety resulting from her wrongful discharge.

84. Plaintiff is also entitled to recover attorneys fees and costs incurred in pursuing this claim.

## PRAYER FOR RELIEF

**WHEREFORE**, it is respectfully prayed that this Court grants to the Plaintiff the following relief:

    a. Back pay, in amounts to be determined at trial;

    b. Liquidated damages;

    c. Punitive damages;

    d. Compensatory damages;

    e. Injunctive and/or declaratory relief;

    f. Pre-judgment and post-judgment interest at the highest lawful rate;

    g. Attorneys' fees and costs of this action, including expert witness fees, as appropriate;

    h. That Defendants be enjoined and restrained from engaging in further discriminatory conduct; and

    i. Any such further relief as justice allows.

## DEMAND FOR JURY TRIAL

Plaintiff hereby requests trial by jury of all issues triable by jury under Oklahoma and Federal law.

**RESPECTFULLY SUBMITTED THIS 8th DAY OF FEBRUARY, 2017.**

s/Christine C. Vizcaino
Christine C. Vizcaino, OBA #30527
Mazaheri Law Firm, PLLC
3445 W. Memorial Rd. Suite H
Oklahoma City, OK 73134
Christine@mazaherilaw.com
*Attorneys for Plaintiff*
