**IN THE UNITED STATES DISTRICT COURT FOR THE
<u>WESTERN DISTRICT OF OKLAHOMA</u>**

| | |
|---|---|
| TAMMY ROBERTS, )<br>)<br>    Plaintiff; )<br>)<br>vs. )<br>)<br>CIMARRON MEMORIAL HOSPITAL )<br>)<br>and )<br>)<br>NEWLIGHT HEALTHCARE LLC )<br>)<br>Defendants. ) | Case No. CIV-2017-131-M |

**<u>JOINT STATUS REPORT AND DISCOVERY PLAN</u>**

Date of Conference:    July 6, 2017 at 2:40 p.m.

Appearing for Plaintiff:    Christine C. Vizcaino, OBA #30527
    Christa Uhland, OBA #30934
    Mazaheri Law Firm, PLLC
    3445 W. Memorial Rd. Ste. H
    Oklahoma City, OK 73134

Appearing for Defendant:    Adam Childers, OBA # 18673
    Melissa McDuffey, OBA #32463
    CROWE & DUNLEVY
    Braniff Building
    324 N. Robinson Ave., Suite 100
    Oklahoma City, OK 73102-8273
    *Attorneys for Defendant Cimarron Memorial Hospital*

    Elaine Turner, OBA #13082
    Lindsay Kistler, OBA #32814
    HALL, ESTILL, HARDWICK, GABLE,
    GOLDEN & NELSON, P.C.
    100 North Broadway, Suite 2900
    Oklahoma City, OK 73102
    *Attorneys for Defendant NewLight Healthcare LLC*

**Jury Trial Demanded ■  -  Non-Jury Trial ☐**

1. **BRIEF PRELIMINARY STATEMENT**. State briefly and in ordinary language the facts and positions of the parties to inform the judge of the general nature of the case.

   a. **Plaintiff**

   Plaintiff asserts claims pursuant to the Americans with Disabilities Act as set forth in 42 U.S.C. §12101 *et seq*. (hereinafter "ADA"), for discrimination based upon her disability and retaliation for requesting a reasonable accommodation. Plaintiff also brings a state law claim for handicap discrimination (disability discrimination) as prohibited by the Oklahoma Anti-Discrimination Act (hereinafter "OADA"), *see* 25 O.S. §1101 *et seq*. Plaintiff asserts claims pursuant to the Genetic Information Nondiscrimination Act of 2008 for discrimination based upon her genetic health information.

   Plaintiff also asserts claims pursuant to the Employee Retirement Income Security Act of 1974 (hereinafter "ERISA"), for retaliation based upon her protected complaints of Defendants' prohibited transactions and breach of fiduciary responsibility.

   b. **Defendant NewLight Healthcare, LLC**

   Defendant denies all of Plaintiff's allegations and further denies that Plaintiff is entitled to any relief whatsoever. Significantly, Defendant NewLight Healthcare, LLC did not employ Plaintiff. Alternatively, Plaintiff was not subjected to disability discrimination or retaliation during her employment at Cimarron Memorial Hospital, which was at all relevant times, Plaintiff's employment. Further, Defendant does not have a sufficient number of employees to be considered an "employer" as it is defined by the Americans with Disabilities Act or the Genetic Information Nondiscrimination Act. Also alternatively, Defendant at all times met or exceed its duties, if any, that it may have had with respect to Plaintiff under the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, and the Oklahoma Anti-Discrimination Act ("OADA"). Any actions taken regarding Plaintiff were taken in good faith and for legitimate, non-discriminatory business reasons.

   c. **Defendant Cimarron Memorial Hospital**

   Defendant, Cimarron Memorial Hospital ("Cimarron") denies the claims made against it by the plaintiff. Plaintiff was employed with Cimarron from

approximately 2000 until in or around July, 2016. During her employment, plaintiff began as a Licensed Practical Nurse but eventually became a Registered Nurse in 2014. From approximately 2014 until May, 2016 plaintiff typically worked two shifts per week as a floor nurse and one shift per week as the Drug Room Supervisor. However, plaintiff was <u>not</u> guaranteed any specific shifts, and she was subject to being scheduled at any time, for any shift, the same as all other employees.

In or around 2015, plaintiff reported that she would be seeking treatment because she discovered she had a BRCA2 genetic marker. Cimarron was fully supportive of plaintiff's personal decision to seek treatment, which included surgery. Cimarron advised plaintiff that she was eligible for medical leave and that she could use her paid time off ("PTO") to cover the time she needed to take off for her surgery and recovery.

Over the course of the next several months, plaintiff took medical leave and occasionally returned to work with light-duty restrictions. By November, 2015 plaintiff had exhausted all of her PTO and medical leave, so Cimarron allowed other employees to donate their PTO so that the plaintiff would continue receiving pay during her medical leave. In total, plaintiff received more than seventeen (17) weeks of leave, all of which was paid.

In December, 2015 and January 2016 plaintiff took intermittent medical leave to attend various doctors' appointments. During this time, plaintiff informed Cimarron that she had tested positive for MRSA (staph infection), which concerned the hospital due to the potential effects that such diagnosis could have on patients. Accordingly, Cimarron advised the plaintiff that she could not have patient contact until she was released by her treating physician.

On or around January 27, 2016 plaintiff submitted a release from her doctor's office that purportedly permitted her to have "full patient contact." However, Cimarron was suspicious of the document because it appeared to be written two different handwritings. Plaintiff denied that the note was written by two separate people, but her doctor's office stated that the portion of the note that said, "No restrictions, may have full patient contact," was not written by their office.

Falsification of medical records is a very serious infraction, which under the then-current employee handbook required mandatory termination. However, Cimarron's CEO redrafted the employee code of conduct to allow for less serious punishment so that plaintiff's employment would not be immediately terminated. In accordance with the newly-drafted policy, Cimarron suspended plaintiff without pay for ninety (90) days for the falsified medical record.

3

During plaintiff's suspension, Cimarron discovered that plaintiff had seriously violated her duties as the Drug Room Supervisor. Specifically, plaintiff had failed to properly dispose of expired medications, which ultimately cost Cimarron more than $17,000 to remedy and could have caused grave consequences from the Drug Enforcement Agency. Despite another serious infraction, Cimarron still did not terminate the plaintiff's employment and instead accepted her resignation from her Drug Room Supervisor position.

Plaintiff was scheduled to return from her suspension on April 28, 2016. However, she had additional surgery and her return-to-work date was not going to be assessed until she attended a doctor's appointment on May 5, 2016. On April 29, 2016 plaintiff requested to be placed on *pro re nata* ("PRN") status. Plaintiff was offered several shifts, including a few night shifts. Plaintiff began declining to work many shifts until eventually she was declining to take any shifts.

During plaintiff's leave, her medical and other benefits continued, and Cimarron continued to make its portion of her premiums. However, premium payments cannot be made until Cimarron receives the full amount of the premium from the employee and the state of Oklahoma for those employees (including the plaintiff) whose medical premiums are subsidized. Plaintiff was <u>never</u> denied coverage under any of her benefit plans.

Cimarron categorically denies that it discriminated against the plaintiff on the basis of her genetic information, any alleged disability (the existence of which is denied) or any other protected category. Further, Cimarron denies that it violated ERISA in any way.

2. **JURISDICTION**. State the basis on which the jurisdiction of the Court is invoked and any presently known objections.

The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§1331 and 1343, 42 U.S.C. § 12117(a). Plaintiff also brings pendent state law claims. This Court also has jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a). Defendants assert, however, that, to the extent Plaintiff has failed to exhaust her administrative remedies, this Court lacks subject matter jurisdiction to hear such claims.

3. **STIPULATED FACTS**. List stipulations as to all facts that are not disputed, including jurisdictional facts.

4. **CONTENTIONS AND CLAIMS FOR DAMAGES OR OTHER RELIEF SOUGHT**.

   a. **Plaintiff:**

1. Each of the Defendants is a common employer of the Plaintiff. Plaintiff received her paychecks from Cimarron Memorial Hospital, however, Cimarron Memorial Hospital is managed and operated by NewLight Healthcare, Plaintiff was supervised by employees of NewLight Healthcare, and the termination decision for Plaintiff was made by NewLight Healthcare.

2. Plaintiff worked at Cimarron Memorial Hospital from approximately December 2000 until July 2016.

3. At all times while employed with Defendants, Plaintiff was qualified for the position she held.

4. Plaintiff satisfactorily performed her job duties during her employment with Defendants.

5. To Plaintiff's understanding, Plaintiff's job and/or job duties continued to exist after her termination.

6. During the course of Plaintiff's employment, Plaintiff participated in Defendants' employee benefits program and has therefore been a Health Plan "participant" within the meaning of § 3(7) of ERISA, 29 U.S.C. 1002(7).

7. Around May 2015, Plaintiff tested positive for BRCA2 Cancer Mutation gene and was diagnosed with early onset BRCA2.

8. Plaintiff notified Defendants of her diagnosis and her need for an accommodation in the form of medical leave so that she could attend doctor's appointments and medical treatments, which leave was protected by the ADA.

9. Plaintiff's supervisor, Barbara Carter, attempted to discourage Plaintiff from having surgery; however, it was medically necessary for Plaintiff to do so.

10. Shortly thereafter, Plaintiff was required to take intermittent medical leave in order to obtain medical testing, treatment and surgical procedures related to her cancer diagnosis.

11. While Plaintiff was out on medical leave, she received harassing phone calls from her supervisor, Barbara Carter, Director of Nursing, in which Ms. Carter threatened the Plaintiff that she would be fired if she did not obtain a medical release and return to work.

12. Plaintiff reported Ms. Carter's behavior to Tim Beard, CEO, but no corrective action was taken.

13. On or about January 13, 2016 Plaintiff turned in a time off request form for the month of February to Ms. Carter.

14. Ms. Carter denied Plaintiff's request for time off and advised Plaintiff that the reason for such denial was because the schedule had already been made and Plaintiff was scheduled for the night shift on February 12, 13, and 14.

15. When Plaintiff questioned Ms. Carter about being scheduled for night shifts when she was a day shift nurse, Ms. Carter informed Plaintiff that she and Mr. Beard had made the decision that Plaintiff needed to work those shifts because she "owed them" for being on medical leave.

16. On or about January 13, 2016, Plaintiff received a call from the hospital scheduled to perform her upcoming surgery on January 18, 2016. Plaintiff was notified that the facility was unable to obtain a prior authorization from her insurance company, Blue Cross Blue Shield, because her medical insurance premiums had not been paid since November 2015.

17. Immediately thereafter, Plaintiff confronted Mr. Beard about Defendants' failure to pay her insurance premiums.

18. Mr. Beard advised Plaintiff that she "needed to keep [her] mouth shut and not worry about it". Mr. Beard also informed Plaintiff that he had used the money to pay other bills and that Defendant would pay the premiums when it had the money to do so.

19. Plaintiff protested Defendants' conduct and informed Mr. Beard of her belief that his behavior was illegal and of her intent to file a complaint with the department of labor regarding this matter.

20. As a result of Plaintiff's surgery on January 18, 2016, she was required to remain off work until around January 27, 2016.

21. While Plaintiff was out on medical leave in January of 2016, she received notice from Aflac that the Defendants had not paid her premiums for this policy either.

22. After being released from her physician around January 27, 2016, Plaintiff returned to work on or about January 28, 2016.

23. On January 28, 2016 Plaintiff was disciplined by Mr. Beard, and placed on a ninety (90) day suspension without pay for allegedly submitting a false doctor's release.

24. The reasons for Plaintiff's suspension were false and pretextual in that Plaintiff had not submitted a false doctor's release and despite having Plaintiff's doctor's office personally contact the Defendants to explain the situation and clear up any confusion, Defendants refused to rescind Plaintiff's suspension.

25. On or about February 7, 2016 Plaintiff submitted a written complaint to the Board of Directors regarding the unlawful conduct of Mr. Beard and Ms. Carter, including Defendants prohibited transactions and breach of fiduciary responsibility.

26. In retaliation for submitting the above complaint, Ms. Carter notified Plaintiff that she would be moved to the night shift and only allowed to work two nights per week upon her return from suspension.

27. Plaintiff protested Ms. Carter's decision, complained of retaliation, and requested that she be permitted to return to her previous work conditions.

28. Due to Defendants' failure to address Plaintiff's concerns, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") around April 24, 2016.

29. In retaliation for reporting Defendants' unlawful conduct, Defendants began to reduce Plaintiff's work hours and shift assignments until she was ultimately no longer scheduled for any shifts around July 2016.

30. Plaintiff's employment was effectively terminated around July 2016.

31. Motivating factors in the decisions to suspend, demote and subsequently terminate the Plaintiff, were due to Plaintiff's disability, genetic information and complaints of disability discrimination in violation of the ADA and state law, with another significant factor being retaliation for her protected activity in reporting Defendants' breach of fiduciary duty and prohibited transactions and filing complaints in response to receiving such unlawful treatment. At the least, these factors were part of a group of mixed motives for such decision such that Plaintiff is entitled to protection under the mixed motive doctrine.

32. As a result of Defendant's actions, Plaintiff has sustained loss of employment, loss of career path, loss of opportunity, loss of wages, loss of fringe benefits, and other compensation; and consequential and compensatory damages including, but not limited to, those for humiliation, loss of dignity, loss of enjoyment of life, worry, stress, and anxiety.

b. **Defendant NewLight Healthcare, LLC:**

1. Plaintiff's Complaint fails to state a claim upon which relief can be granted.

2. Defendant does not have a sufficient number of employees to be considered an "employer" governed by the ADA and GINA and, therefore, this Court lacks subject matter jurisdiction as to Defendant as to all claims under these statutes.

3. As to Defendant, Plaintiff has failed to exhaust her administrative remedies as to her claims under the ADA, OADA, and GINA by failing to file a charge of discrimination. Thus, this Court lacks subject matter jurisdiction to hear such claims.

4. Plaintiff has failed to exhaust her administrative remedies as to any claims, subject to the jurisdiction of the EEOC or OCRE, which were not part of her EEOC Charge No. 564-2016-640. Defendant has not yet obtained discovery from Plaintiff (including Plaintiff's deposition) and facts pertaining to Plaintiff's exhaustion are within Plaintiff's control and will become known during discovery. To the extent Plaintiff has failed to exhaust her administrative remedies, this Court lacks subject matter jurisdiction to hear such claims.

5. Plaintiff may have failed to mitigate her alleged damages, may have failed to take reasonable action to avoid damages, and may not be entitled to some or all of the relief demanded. Plaintiff has not yet provided Defendant with a calculation of alleged damages and Defendant has not yet obtained discovery from Plaintiff (including Plaintiff's deposition) to determine what efforts Plaintiff made to find other employment. Facts pertaining to Plaintiff's efforts to mitigate her damages are within Plaintiff's control and will become known during discovery.

6. Non-harassment, non-discrimination, and non-retaliation policies and procedures were adequately and reasonably disseminated and enforced, and Plaintiff's claims are barred to the extent she failed to properly follow procedures for reporting alleged harassment, discrimination, or retaliation and/or to the extent prompt, appropriate and effective action was taken to prevent or correct any such behavior and/or harassment following notification thereof.

7. Although Defendant did not employ Plaintiff, Defendant asserts that after acquired evidence limits the damages available to Plaintiff in that, following Plaintiff's resignation from her employment with the hospital, it was learned that Plaintiff had taken medications from the hospital pharmacy without paying for the same. Upon information and belief, had this been discovered prior to Plaintiff's resignation, Plaintiff's employment would have been terminated by the hospital.

8. Defendant made good faith efforts to comply with all of the statutes upon which Plaintiff bases her claims and, therefore, Defendant cannot be held liable for punitive damages.

9. Plaintiff is not entitled to punitive damages, and the imposition of punitive damages in this action would violate the Constitution of the United States and/or the Constitution of the State of Oklahoma.

c. **Defendant Cimarron Memorial Hospital**

1. As ERISA, 29 U.S.C. § 1001, *et seq.*, as amended, and its corresponding body of federal law applies to plaintiff's allegations, the claims and/or remedies asserted by Plaintiff which are inconsistent with the exclusive remedies expressly provided by ERISA are preempted.

2. Plaintiff is not entitled to a jury trial on ERISA claims.

3. Plaintiff's complaint fails to state a claim upon which relief can be granted.

4. The Hospital has not engaged in any conduct that was motivated by or constituted discrimination against Plaintiff by virtue of her alleged disability – the existence of which is denied – or for any other unlawful reason.

5. The Hospital has not engaged in any conduct that was motivated by or constituted discrimination against Plaintiff by virtue of her genetic information or for any other unlawful reason.

6. The Hospital has not engaged in any conduct that would warrant an award of punitive damages.

7. Plaintiff is not a qualified individual with a disability.

8. Each action taken by the Hospital regarding plaintiff and her employment was taken in good faith to comply with all federal and state laws.

9. Plaintiff's claims are barred in whole or in part due to a failure to exhaust applicable administrative remedies.

10. Plaintiff's claims are barred or diminished to the extent she failed to properly mitigate her alleged damages.

11. Even if the Hospital was motivated by a prohibited factor (which is not the case) any action taken regarding plaintiff's employment would have been taken even absent such motivation.

12. The Hospital adequately and reasonably disseminated policies and procedures regarding non-harassment, non-retaliation and non-discrimination, and plaintiff's claims are barred to the extent she failed to properly follow procedures for reporting alleged harassment, discrimination or retaliation and/or to the extent prompt, appropriate and effective action was taken to prevent or correct any such behavior and/or harassment following notification thereof.

13. Some or all of plaintiff's alleged damages are limited or barred due to evidence acquired after plaintiff's voluntary resignation from employment. Specifically, the Hospital learned post separation that plaintiff had engaged in inappropriate and potentially illegal activities regarding the storage and maintenance of hospital medications from the Hospital pharmacy, causing the Hospital to incur expenses that it would not have otherwise incurred. Had this information been discovered prior to plaintiff's resignation, plaintiff's employment would have been terminated by the Hospital.

14. The Hospital is entitled to an offset for damages, loss and/or theft created by the plaintiff's willful, reckless and/or negligent conduct.

15. The Hospital engaged in good-faith efforts to comply with all of the statutes upon which plaintiff bases her claims and, therefore, the Hospital cannot be held liable for punitive damages.

16. Plaintiff is not entitled to punitive damages, and the imposition of punitive damages in this action would violate the Constitution of the United States and/or the Oklahoma Constitution.

5. **APPLICABILITY OF FED. R. CIV. P. 5.1 AND COMPLIANCE**.

    Do any of the claims or defenses draw into question the constitutionality of a federal or state statute where notice is required under 28 U.S.C. § 2403 or Fed. R. Civ. P. 5.1?

    ☐ Yes ■ No

6. **MOTIONS PENDING AND/OR ANTICIPATED** (include date of filing, relief requested, and date responsive brief to be filed).

    A. Plaintiff:

    1. Plaintiff anticipates filing a Motion for Protective Order, Motions in Limine and a partial Motion for Summary Judgment should the facts warrant.

    B. Defendant NewLight Healthcare, LLC:

    1. Defendant anticipate filing a dispositive motion on or before the deadlines set by the Court. Defendant also anticipates filing a motion for protective order if Plaintiff seeks confidential and/or propriety information in discovery.

    C. Defendant Cimarron Memorial Hospital

    1. Cimarron anticipates filing Motions in Limine and a Motion for Summary Judgment should the facts warrant. Further, Cimarron anticipates joining the plaintiff in filing a Motion for Protective Order to protect certain confidential and/or proprietary information of the parties and other non-parties to this suit.

7. **COMPLIANCE WITH RULE 26(a)(1)**.  Have the initial disclosures required by Fed. R. Civ. P. 26(a)(1) been made?  ☐ Yes   ■ No

    If "no," by what date will they be made? June 30, 2017

8. **PLAN FOR DISCOVERY**.

    A.    The discovery planning conference (Fed. R. Civ. P. 26(f)) was held on May 19, 2017.

    B.    The parties anticipate that discovery should be completed within **9** months.

    C.    In the event ADR is ordered or agreed to, what is the minimum amount of time necessary to complete necessary discovery prior to the ADR session? The parties do not currently request ADR.

    D.    Have the parties discussed issues relating to disclosure or discovery of electronically stored information, including the form or forms in which it should be produced, pursuant to Fed. R. Civ. P. 26(f)(3)(C)?

    ■ Yes ☐ No

    E.    Have the parties discussed issues relating to claims of privilege or of protection as trial-preparation material pursuant to Fed. R. Civ. P. 26(f)(3)(D)?

    ■ Yes ☐ No

    To the extent the parties have made any agreements pursuant to Fed. R. Civ. P. 26(f)(3)(D) and Fed. R. Civ. P. 502(e) regarding a procedure to assert claims of privilege/protection after production and are requesting that the court include such agreement in an order, please set forth the agreement in detail below and submit a proposed order adopting the same.

    N/A

    F.    Identify any other discovery issues which should be addressed at the scheduling conference, including any subjects of discovery, limitations on discovery, protective orders needed, or other elements (Fed. R. Civ. P. 26(f)) which should be included in a particularized discovery plan.

    None at present.

9. **ESTIMATED TRIAL TIME**: 3-4 days

10. **BIFURCATION REQUESTED**: ☐ Yes ■ No

11. **POSSIBILITY OF SETTLEMENT**: ☐ Good   ■ Fair   ☐ Poor

12. **SETTLEMENT AND ADR PROCEDURES**:

    A.    Compliance with LCvR 16.1(a)(1) - ADR discussion: ■ Yes ☐ No

    B.    The parties request that this case be referred to the following ADR process:

    ☐ Court-Ordered Mediation subject to LCvR 16.3
    ☐ Judicial Settlement Conference
    ☐ Other _____

■ None - the parties do not request ADR at this time.

13. <u>Parties consent to trial by Magistrate Judge?</u>   ☐ Yes   ■ No

14. <u>Type of Scheduling Order Requested</u>.   ■ Standard -   ☐ Specialized (If a specialized scheduling order is requested, counsel should include a statement of reasons and proposal.)

**RESPECTFULLY SUBMITTED THIS 27th DAY OF JUNE, 2017**

/s/ Christine C. Vizcaino
Christine C. Vizcaino, OBA #30527
Mazaheri Law Firm, PLLC
3445 W. Memorial Rd. Ste. H
Oklahoma City, OK 73134
(405)414-2222
(405)607-4358 FAX
christine@mazaherilaw.com
*Attorney for Plaintiff*

Adam Childers, OBA #18673
Melissa McDuffey, OBA #32463
CROWE & DUNLEVY
Braniff Building
324 N. Robinson Ave., Suite 100
Oklahoma City, OK 73102-8273
*Attorneys for Defendant Cimarron Memorial Hospital*

Elaine Turner, OBA #13082
Lindsay Kistler, OBA #32814
HALL, ESTILL, HARDWICK, GABLE,
GOLDEN & NELSON, P.C.
100 North Broadway, Suite 2900
Oklahoma City, OK 73102
*Attorneys for Defendant NewLight Healthcare LLC*